## ADOLPH EFFENGHAM AND ANOTHER v. T. M. PESCH AND OTHERS.[1]

February 27, 1931.

No. 28,273.

*John R. Foley,* for appellants.

*Dexter F. Hamilton* and *James T. Spillane,* for respondents.

STONE, J.

Action to foreclose a mechanic's lien. After a decision for plaintiffs, defendants T. M. Pesch, owner of the property in question, and Mathilda Pesch, his wife, appeal from the order denying their motion for amended findings or a new trial. The other defendants, holders of other liens, are not parties to the appeal.

September 7, 1928, plaintiffs, building contractors at Rochester, contracted in writing with defendant T. M. Pesch to build for the latter an apartment house called the "Dolores Apartments" for the stipulated price of $53,000, payable in instalments as the work progressed. The decision below found that $2,612, exclusive of interest, remained due plaintiffs. That sum was arrived at after crediting plaintiffs for certain extras and charging them with some damage for delay. With those items we are not now concerned.

The one issue for present consideration arises from a claim of defendants that they were entitled to a credit of $4,000, not allowed

[1]Reported in 235 N. W. 278.

below. The claim is based upon a memorandum dated September 11, 1928, signed by plaintiffs. Its first paragraph is a promise by plaintiffs to assume $2,000 of the cost of removing from the site of the new building and repairing a dwelling house. That item is not in issue. The second and concluding paragraph of the memorandum reads thus:

"If the owner of this Dolores Aptm has to deposit the $9,000 in the Bank before we receive it on this Aptm as payment the signers will advance $4,000 to Dr. Pesch which will be is (sic) included in the $53,000 on the contract on the Dolores."

The "bank" referred to was one which was financing the construction work for defendants Pesch. It was loaning him, as we gather from the record, all but $9,000 of the money needed. He was having difficulty in finding his share. There is evidence that when the memorandum of September 11 was given him by plaintiffs he had in hand only $8,000. In order to get on with the work plaintiffs gave him their written promise, as it now reads, to "advance" $4,000. For defendants Pesch the claim is that instead of a mere advance there was to be an agreed reduction of that much in the contract price—the latter was to be reduced from $53,000 to $49,000.

We cannot disturb the decision for plaintiffs on this issue. There are insurmountable obstacles. At the outset the testimony for plaintiffs is that as the memorandum was written and delivered it was an agreement to advance $1,000 instead of $4,000. If that be true, and it was so considered below, the writing has been altered while in defendant's possession. But passing that, the agreement is so ambiguous that defendants' construction is not compelled. On its face uncertain and even more so when applied to its subject matter, it is difficult without extraneous help to determine just what was intended by the promised "advance." Testimony in explanation was received. That for plaintiffs is unequivocal that the intention was not to reduce the contract price at all but only to make to defendants a loan to enable them to get the money from the bank or at least expedite its payment.

A persuasive circumstance against defendants Pesch is that in their original and verified answer they emphatically negatived any claim of an agreement, by the memorandum of September 11, 1928, or otherwise, to reduce the purchase price by $4,000 or any other sum. They averred affirmatively "that the contract price for the construction of said apartment house was $53,000" and admitted "that there is still due and owing" thereon $2,500. Their whole defense then was that the contract had been violated, in certain particulars and that in consequence they were entitled to offset or recoupment of the sums in which they claimed to have been damaged. That answer was verified by both defendants personally July 16, 1929. Not until the opening of the trial, January 20, 1930, did they ask leave to amend so as to assert that the "agreement between the parties was for the erection of said building for a price of $49,000."

The controlling issue resolved itself into one of fact, upon which, there being ample evidence in support, the decision below was final.

Order affirmed.